*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COPELAND, Minors.

UNPUBLISHED
January 26, 2023

No. 361088
Wayne Circuit Court
Family Division
LC No. 1995-331175-NA

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to his two sons, WC and IC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent's home).[1] We affirm.

This case arises from the removal of the children[2] in May 2019, because respondent was incarcerated and left the children with his brother, who left the children in the care of a neighbor. It was contrary to the welfare of the children to remain in respondent's home because respondent repeatedly left the children home alone without proper care, supervision, or food for long periods of time, he had a history of alcohol abuse, and when intoxicated, he was verbally abusive of the children. The petition to remove the children was granted, and respondent entered a parent-agency agreement requiring him to participate in the following services: a substance abuse assessment, parenting classes, maintain housing and income, psychological and psychiatric evaluations, to

---

[1] The parental rights of the children's mother have previously been terminated. She is not a party to this appeal.

The order terminating respondent's parental rights also lists MCL 712A.19b(a)(*ii*) (desertion); however, when the court made its findings on statutory grounds it stated that MCL 712A.19b(c)(*i*) and (j) were the only grounds substantiated by clear and convincing evidence.

[2] A third child, ZC, was also removed from respondent's care. Given her age, she was placed in semi-independent living, and is not subject to this appeal.

comply with probation, to take prescribed medication, to maintain contact with the agency, regular visits with the children, and random drug screens.

From June 2019 to October 2021, respondent fluctuated between partial and noncompliance with his treatment plan, and a petition to terminate was filed. The hearing on the petition began in November 2021, and the trial court bifurcated the hearing and gave respondent even more time to demonstrate compliance. However, respondent failed to appear at the resumed hearing on February 1, 2022, and the trial court found that statutory grounds existed, and it was in the children's best interests to terminate respondent's parental rights.

A trial court must order the termination of a respondent's parental rights if the petitioner establishes a statutory ground for termination by clear and convincing evidence, and the trial court finds by a preponderance of the evidence based on the record as a whole that termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court's best-interests determination is reviewed for clear error. *Id*. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406; 409; 890 NW2d 676 (2016) (quotation marks and citation omitted).

MCL 712A.19b(5) provides, "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." The prosecution must prove that termination is in the child's best interests by a preponderance of the evidence. *In re Schadler*, 315 Mich App at 408. A trial court must weigh all of the evidence in making a best-interests determination. *In re White*, 303 Mich App at 713. This encompasses many factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," as well as "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (quotation marks and citations omitted).

Here, a preponderance of the evidence established that termination was in the children's best interests. Despite completing parenting classes, respondent yelled at the children during parenting time, leading to IC requesting a return to supervised visitation. Although respondent asserts there was a bond with his children, both IC and WC ultimately declined visitation because of respondent's aggressive behavior toward them. Respondent was given years to comply with his treatment plan, but as of the first date of the bench trial, his home had not been assessed and he had no legal income, nor had he completed family or individual therapy. He was given an additional two months after the first hearing date, and then he failed to appear when the hearing resumed. He only visited the children a handful of times in a period lasting over two years. He missed 105 of 120 required drug screens. Although WC was nearly 16 years old, there remained the possibility of adoption. One caseworker testified that termination was in the children's best interests because respondent was such a "disruptive influence" on their lives. Thus, the trial court properly considered several relevant factors, concluded that the children needed permanence, stability, and finality, and did not clearly err in determining that termination was in their best interests.

-2-

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto
