*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. R. MCCOY, Minor.

UNPUBLISHED
June 16, 2022

No. 359187
Macomb Circuit Court
Family Division
LC No. 2021-000046-NA

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent and his girlfriend lived together with her three children JH, BW, and AM. Respondent is AM's biological father, and while he was not the biological father of the other two children, they looked to him as a father figure. When AM was a few months old, respondent viciously beat JH, causing severe injuries that medical professionals at the hospital compared to what would be sustained in a motor-vehicle accident. Respondent pleaded no contest to first-degree child abuse, MCL 750.136b(2), and was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 7 to 25 years in prison. Respondent will be in prison until at least 2028; the judgment of sentence also prohibited respondent from having any contact with JH and his family.

The Department of Health and Human Services filed a petition to terminate respondent's parental rights to AM based on the physical abuse of JH. The trial court found statutory grounds to terminate respondent's parental rights, but concluded that termination was not in AM's best interests. We vacate and remand for further proceedings.

## I. BACKGROUND

Before respondent physically assaulted four-year-old JH, he primarily cared for JH, BW, and AM while their mother worked. Respondent's relationship with the children's mother was not perfect—on one occasion he choked their mother during an argument—but the household appeared to be doing well. That changed when respondent viciously beat JH. The beating required JH to go to the hospital, resulted in respondent's criminal conviction, and was severe enough that the children's mother was told that JH was lucky to survive. AM was six months old when she was removed from respondent's care; he has not had any contact with AM since that time. Although AM's mother is not a party on appeal, the Department initially sought to terminate her parental rights to the children. The petition against AM's mother was later changed to have a goal

-1-

of reunification instead of termination, but she was still working through her service plan at the time of the termination hearing.

During the termination hearing, respondent testified that he wanted to remain in AM's life and that he would work to become a better father while in prison. AM's mother, however, testified that she thought it was in AM's best interests for the trial court to terminate respondent's parental rights. She opined that any bond that previously existed between AM and respondent had been broken because AM was so young when she was removed from respondent's care. AM's mother additionally stressed the severity of the injuries JH sustained when respondent assaulted him. A foster-care worker agreed with AM's mother and opined that termination was in AM's best interests.

The trial court found that it was in AM's best interests to have a father and know who he was, even though he had severely injured her brother. The trial court stated that respondent's abuse of JH would be addressed by the criminal court and opined that AM's mother getting full physical and legal custody of AM would be sufficient to protect AM from respondent. Although the trial court did acknowledge that respondent "won't be able to have contact with [AM] for some time," it still concluded that termination of respondent's parental rights was not in AM's best interests. The Department then filed a motion for reconsideration, which the trial court denied. This appeal followed and we granted the Department's application for leave to appeal. *In re McCoy*, unpublished order of the Court of Appeals, entered December 9, 2021 (Docket No. 359187).

II. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "[T]he court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best-interests determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

Under the anticipatory-neglect doctrine, "how a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (cleaned up). The doctrine also applies to circumstances in which a respondent neglected a child to whom he was not related. *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020).

Respondent viciously beat JH, causing injuries that were reminiscent of a motor-vehicle accident. He will be incarcerated until at least 2028, when AM will be seven years old, and he cannot have any contact with her while incarcerated because she is a member of JH's family. Any bond he may have had with AM has surely been diminished and likely cannot be strengthened for more than five years. Respondent's beating of JH may be indicative of how he may treat AM in the future. Additionally, respondent's assault of JH was not an isolated incident because he also choked AM's mother during an argument. While the trial court is correct that AM's mother could obtain full legal and physical custody of AM, that will not protect AM as much as an order terminating respondent's parental rights would. Additionally, AM's mother obtaining full legal and physical custody of AM would depend on her completing her service plan and being reunified with AM. If she did not do so, then respondent would be AM's only legal parent. Although, at the time of the termination hearing, AM's mother appeared to be progressing well toward reunifying with AM, she had not yet done so. Accordingly, there was no guarantee at the time of the termination hearing that AM's mother would even have the opportunity to seek full legal and physical custody of AM.

Additionally, the trial court stressed the importance of AM having a father and the comfort it could give her to know that she has a father, even though he is incarcerated. When doing so, however, the trial court failed to explain why AM having respondent in her life should be treated any differently from any other termination-of-parental-rights case in which a child may lose access to her then-legal parent.

In sum, the trial court's best-interests analysis was deficient on several grounds. The trial court's conclusion was in clear error. Whether a more developed factual record and sound analysis with respect to the best-interests factors will favor termination or not is left for the trial court to consider in the first instance.

## III. CONCLUSION

For the reasons stated in this opinion, we vacate the portion of the trial court's order concluding that termination of respondent's parental rights to AM was not in AM's best interests and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle