*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. D. SALAS, Minor.

UNPUBLISHED
October 06, 2025
1:30 PM

No. 374132
Montcalm Circuit Court
Family Division
LC No. 2024-001111-NA

AFTER REMAND

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

This case, involving the termination of respondent-mother's parental rights to the minor child, ES, under MCL 712A.19b(3)(c)(*i*) (conditions leading to the adjudication continue to exist with no reasonable likelihood of rectification), (3)(g) (failure to provide proper care despite financial ability to do so), and (3)(j) (reasonable likelihood of harm if the child is returned to the respondent's home), returns to this Court after remand. We previously affirmed the trial court's reasonable-efforts finding but vacated the termination order and remanded for further proceedings because the trial court failed to consider ES's placement with a relative when deciding whether termination was in ES's best interests. On remand, the trial court complied with this Court's remand order. We now affirm the termination of respondent's parental rights.

## I. BACKGROUND

This Court's previous opinion laid out the basic facts underlying the termination of respondent's parental rights as follows:

> These child-protective proceedings began in January 2024 when the Department of Health and Human Services (DHHS) filed a petition asking the trial court to take jurisdiction over ES. The petition alleged that respondent had previously had her rights to five children terminated due to issues with mental health, domestic violence, and unstable housing and income that prior case service plans had tried to address without success. And respondent, according to the

-1-

petitioner, continued to struggle with these same issues—the petition alleged that respondent was currently living in a shed on a couple's property, and that couple reported that they had been primarily caring for ES, with respondent "spending approximately 20 minutes a day with" the child. At a later hearing, respondent admitted to the prior terminations, to being homeless, to historically having issues with stable housing, and to dealing with mental health issues. Her counsel conceded that, based on these concessions, the trial court could take jurisdiction. The trial court agreed and accordingly took jurisdiction over ES and placed her in the care and custody of the DHHS.

The DHHS then provided respondent with a case service plan, as part of which she was referred to numerous services, including a psychological evaluation, counseling, a parenting program, and housing services. The trial court ordered respondent to comply with the service plan and participate in these services.

As the case progressed, respondent unfortunately failed to comply with her case service plan, despite the DHHS's efforts. This led the trial court to order the DHHS to petition for the termination of respondent's parental rights, which it did.

At the ensuing termination hearing, the trial court heard from a caseworker about the DHHS's efforts to reunite respondent with ES and respondent's general noncompliance with her case service plan. During that testimony, the caseworker explained that the DHHS had concerns about respondent's cognitive abilities, so it modified respondent's service plan to address those concerns. The caseworker further explained that the DHHS was not able to create a more-tailored service plan because, to do that, it needed the results of respondent's psychological evaluation, but respondent refused to complete that evaluation. After listening to each side's closing arguments, the trial court found that the DHHS had made reasonable efforts to reunify respondent and ES but that those efforts were unsuccessful. The court further found that petitioner had established by clear and convincing evidence statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j), and that termination of respondent's parental rights was in ES's best interests. The court accordingly ordered the termination of respondent's parental rights to ES. [*In re Salas*, unpublished per curiam opinion of the Court of Appeals, issued August 14, 2025 (Docket No. 374132), pp 1-2.]

We remanded because the trial court erred when it failed to consider ES's relative placement when it considered whether termination was in ES's best interests. See *id*. at 4, citing *In re Mays*, 490 Mich 993, 994 (2012), and *In re Olive/Metts*, 297 Mich App 35, 43-44; 823 NW2d 144 (2012). On remand, the trial court acknowledged that it failed to consider ES's relative placement at the time of termination and then went on to review some of the pertinent facts of the case. First, the court noted that respondent previously had her parental rights terminated to five children and that she was offered case service plans in those cases. Next, the court stated that following review hearings in June and September of 2024, the court found that respondent was not participating in any aspect of her case service plan. In addition, the court stated that respondent chose not to visit with ES, which led to the court suspending her parenting time for failing to visit, and respondent never requested for parenting time to be reinstated. Finally, the court stated that

-2-

respondent had not provided any emotional, mental, or physical support for ES. As a result, the trial court concluded that despite ES's placement with a relative, it was in ES's best interests to terminate respondent's parental rights as respondent "has not made any attempt whatsoever to show the Court that she is remotely interested in the welfare of the child." In contrast, the court found that ES's relative placement provided the care, love, and permanence that ES required. The trial court then entered a new order terminating respondent's parental rights to ES.

## II. REMAINING ARGUMENTS FROM RESPONDENT'S APPEAL

Respondent raises two additional arguments in her brief on appeal that this Court could not address in its previous opinion due to vacating the trial court's best-interest analysis. Respondent argues that the trial court clearly erred when it found by a preponderance of the evidence that termination was in ES's best interests. Additionally, she argues that the court erred by failing to consider a guardianship as an alternative to terminating respondent's parental rights. We disagree with both of respondent's arguments.

## A. BEST INTERESTS

A trial court's finding that termination is in a child's best interests is reviewed for clear error. *In re Olive/Metts*, 297 Mich App at 40. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The focus of the best-interest analysis is the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Determining whether termination is in a child's best interests requires a holistic analysis, as part of which a court can consider things like the child's bond with the parents, the parent's parenting ability, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in the parent's care, and the advantages of the child's foster placement over the parent's home. *In re Rippy*, 330 Mich App 350, 360; 948 NW2d 131 (2019). Finally, relative placement is an "explicit factor to consider in determining whether termination was in the child[]'s best interests[.]" *In re Mason*, 486 Mich at 164. "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re VanDalen*, 293 Mich App 120, 147; 809 NW2d 412 (2011) (quotation marks and citation omitted).

The trial court found that, despite ES's placement with a relative, a preponderance of the evidence proved that termination was in ES's best interests because respondent had not adequately participated in parenting classes, domestic-violence classes, counseling services, or a psychological evaluation. The court also relied on the facts that respondent had not obtained adequate housing, she had very limited interaction with ES since removal, and she did not make any attempt to support ES after June 2024.

Respondent argues that the trial court erred in its determination that termination was in ES's best interests because (1) respondent only stopped participating in parenting time because

she mistakenly believed that she was no longer allowed parenting time, (2) ES was placed with her maternal aunt, and (3) there was no concern about domestic violence in this case.

The record shows that respondent failed to comply with her case service plan. Although she did participate in parenting time and classes initially, she did not take advantage of all the time with ES available to her. Respondent eventually missed so many parenting-time appointments that she was discharged from the program. Respondent testified that she believed that being discharged meant that she was no longer allowed parenting time and that she would have continued had she known otherwise. Caseworker Emily Davidson, on the other hand, testified that she continued to try to schedule parenting time for respondent every week until the court discontinued respondent's parenting time after the September 17, 2024 review hearing, but respondent never confirmed those appointments. The trial court did not clearly err by identifying that respondent's nonparticipation in services, particularly parenting time, weighed in favor of termination.

On the matter of domestic violence, respondent told the DHHS repeatedly that she was not in a relationship during this case. However, the psychological assessment report stated that respondent brought Triben Wieland to her second psychological evaluation and told the staff at that clinic that Wieland was her boyfriend and that they had reconnected when Wieland got out of jail. Respondent did not want to be interviewed outside Wieland's presence, and she had a black eye at the time that she attributed to "falling off a ladder." Respondent's black eye and refusal to conduct the psychological evaluation without Wieland present suggest an abusive relationship with Wieland. Respondent's case service plan included services intended to remedy the court's concerns about respondent's history as both a victim and perpetrator of domestic violence. Respondent did not participate in domestic-violence services until at least October 2024.[1] The trial court did not clearly err by finding that past and present concerns about domestic violence weighed in favor of termination.

At the termination hearing, respondent disputed the assertion that her home in Ionia was inappropriate. The trial court apparently did not find respondent's testimony credible. Given Caseworker Davidson's testimony that respondent's Ionia home had exposed subflooring, missing siding, feces on the floor, and multiple people living in the home, the trial court correctly identified that respondent's housing situation weighed in favor of termination.

The trial court did not clearly err by finding that the preponderance of the evidence shows that termination is in the best interests of ES. On remand, the trial court explicitly considered ES's placement with her aunt as weighing against termination, see *In re Mason*, 486 Mich at 164, but nevertheless determined that termination was in ES's best interests. To the extent respondent suggests that relative placement is conclusive for determining best interests, she is incorrect. As noted previously, relative placement is but one factor a court considers when determining the best interests of the child, and that factor is not dispositive. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022). The court found that respondent did not participate in any aspect of her case service plan and failed to visit ES. Further, the court determined that respondent had not provided

---

[1] The record established that respondent had previously exposed her children to domestic violence. As a result, she was offered a supportive program in the present case, which she never completed.

any emotional, mental, or physical support for ES, whereas ES's relative placement provided the care, love, and permanence that ES required. Because the trial court addressed ES's relative placement in making its best-interests determination and made the appropriate findings, we do not have a definite and firm conviction that the court made a mistake.

## B. GUARDIANSHIP

Finally, respondent argues that the trial court erred by failing to consider a guardianship as an alternative to terminating respondent's parental rights. We disagree.

To preserve an issue for appellate review, the issue must have been raised in the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Because respondent never sought to establish a guardianship for ES in the trial court, this issue is not preserved. This Court reviews for plain error unpreserved claims in termination proceedings. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). The party alleging error must establish that the trial court made an obvious error that affected substantial rights. *Id*. "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

Respondent argues that it was plain error for the trial court to not consider placing ES in a guardianship instead of terminating respondent's parental rights. But she fails to explain how (1) the court plainly erred by failing to consider a guardianship and (2) had a guardianship been considered, it would have changed the outcome of the proceedings. Indeed, in her brief on appeal, she merely avers that a trial court "can" consider a guardianship. Respondent seems to concede that such a consideration is discretion, not mandatory. Consequently, respondent has failed to establish plain error for this unpreserved issue.[2]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[2] Respondent also has abandoned the issue by failing to adequately cite any law or authority related to guardianships. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (stating that a party may not merely announce a position and "leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position").